# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VEBS, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LEON SIMONEAU, an individual, and DOES 1–10, inclusive,<br><br>Defendants. | Case No.: 25-cv-02270-GPC-KSC<br><br>**ORDER MODIFYING DECEMBER 4, 2025 OPINION AND ISSUING AMENDED OPINION**<br><br>**[ECF No. 8]** |

On September 8, 2025, Defendant Leon Simoneau filed a motion to dismiss Plaintiff VEBS, Inc.'s complaint. ECF No. 4. On December 4, 2025, this Court issued a Memorandum Opinion and Order granting Defendant's motion, in part, and denying the motion, in part. ECF No. 8.

In its Order, the Court granted Defendant's motion to dismiss Plaintiff's second cause of action alleging fraudulent concealment with leave to amend. ECF No. 8, at 22. In his motion, Defendant also moved to dismiss Plaintiff's prayer for punitive damages on its fraudulent concealment claim, arguing that Plaintiff alleged insufficient facts to support such an award. ECF No. 4-1, at 17. Although the Court had already dismissed the fraudulent concealment claim, the Court still addressed the motion to dismiss the punitive

1

25-cv-02270-GPC-KSC

damages request. In Section IV of the Court's Order, this Court found that a motion to dismiss for failure to state a claim was not the proper mechanism to challenge a prayer for punitive damages. ECF No. 8, at 24. The finding did not bear on the Court's ultimate holding in the case, as the underlying claim had already been dismissed without prejudice.

Upon further consideration, the Court *sua sponte* **MODIFIES** its earlier opinion by striking Section IV from the December 4, 2025 Order in its entirety. The Court issues this Order in place of the December 4, 2025 Order, ECF No. 8. The clerk is directed to restrict the previous Order, ECF No. 8, such that it is viewable only by case participants. The prior Order shall not be cited as the law of the case in future proceedings.

The Court hereby amends the Order to read as follows:

## AMENDED MEMORANDUM OPINION AND ORDER

On September 8, 2025, Defendant Leon Simoneau filed a motion to dismiss Plaintiff VEBS, Inc.'s complaint pursuant to Federal Rule of Civil Procedure ("Rule")[1] 12(b)(6). ECF No. 4. On October 10, 2025, Plaintiff filed a response in opposition to Defendant's motion, ECF No. 6, to which Defendant replied on October 31, 2025, ECF No. 7. The Court finds that the matter is appropriate for decision without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons below, the Court GRANTS Defendant's motion, in part, and DENIES the motion, in part.

## BACKGROUND

Plaintiff VEBS, Inc. "provides a service to educate federal employees on their retirement benefits," resulting in sales of life insurance, annuities, and long-term care.[2]

---

[1] "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

[2] In reviewing a motion to dismiss, the Court accepts all facts alleged in Plaintiff's complaint as true. *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

ECF No. 1-2, at 10. Plaintiff has developed relationships with federal agencies and enters agency facilities to offer training programs on the federal retirement system. *Id.* In doing so, Plaintiff utilizes retirement planning workbooks which is has developed and protected via copyright. *Id.* After training, attendees schedule one-on-one consultations with agents, which result in the sales of insurance products. *Id.*

Plaintiff has scaled its programming by engaging "independent contractor agents all over the country." *Id.* These agents are "licensed insurance practitioners who have been trained in the VEBS Program and on federal retirement benefits." *Id.* All VEBS contractors sign a series of contracts with Plaintiff, including an Independent Agent Marketing and Limited License Agreement ("Marketing Agreement") and a Fee Agreement. *Id.* at 10-11.

Defendant Simoneau entered into a contractual agreement with Plaintiff in July 2012. *Id.*, at 11. In doing so, he signed a Fee Agreement and Marketing Agreement. *Id.* The Fee Agreement provides that Defendant shall "compensate VEBS with 30% of all life insurance, annuity, and long-term care business generated under the VEBS Program." *Id.* Business is considered to be generated under the VEBS Program "if the applicant for the policy or annuity is a government employee who (i) attended a Program workshop conducted by [Defendant]; or (ii) was referred to [Defendant] as a direct result of marketing for the Program; or (iii) completed a Federal Employments Benefits Report as part of the Program." *Id.*, at 17. Plaintiff's thirty percent split of Defendant's earnings generated through the Program are referred to in the contract as "Override Commissions." *Id.*, at 11, 22. The Marketing Agreement further states that Defendant is to continue paying Override Commissions to Plaintiff even after the termination of the contractual agency relationship between the parties. *Id.*, at 11, 25.

Plaintiff alleges that in August 2015, Defendant began misstating the commission split between Plaintiff and Defendant when writing insurance policies for clients obtained through the VEBS Program, thus providing Plaintiff with a smaller amount of commissions

3

than the thirty percent to which they were entitled under the Fee Agreement. *Id.*, at 12. Most of Defendant's business with clients through the VEBS Program was written with Midland Insurance Company ("Midland."). *Id.*, at 11. Plaintiff alleges that when Defendant wrote new business with Midland for clients generated through the VEBS Program, Defendant was required to identify Plaintiff as a co-agent receiving a commission split and instruct Midland to split commissions in conformity with the Fee Agreement. *Id.*, at 12. Plaintiff notes that it does not receive copies of individual agent's applications to Midland. *Id*. Instead, it only receives commission split checks from Midland. *Id.* Thus, when Defendant allegedly began misstating the commission split on his applications to Midland in August 2015, Plaintiff did not detect the misconduct. *Id*. Plaintiff alleges that by July 2016, Defendant was altering the commission split in his favor with all his clients. *Id.* Though this conduct occurred nearly ten years ago, Plaintiff alleges that it just recently learned of Defendant's practice of altering the commission split. *Id.*

Defendant terminated his agency relationship with Plaintiff in June 2022. *Id*., at 11. In the time since, Defendant has moved several of his clients into new products. *Id*. Plaintiff further alleges that, per the Marketing Agreement, Defendant retains an obligation to continue paying Override Commissions to Plaintiff on all sales to clients generated through the VEBS Program. *Id.* However, Defendant has refused to pay any post-termination Override Commissions. *Id.*, at 12.

On July 3, 2025, Plaintiff filed suit against Defendant Simoneau and Does 1-10 in the San Diego Superior Court. ECF No. 1-2, at 9. In its complaint, Plaintiff alleged three causes of action: 1) breach of contract, 2) fraud by concealment, and 3) accounting. *See generally* ECF No. 1-2, at 9-15. Plaintiff seeks compensatory damages and attorney's fees on its breach of contract claim and seeks compensatory damages and punitive damages on its fraudulent concealment claim. *Id.* at 14. On September 2, 2025, Defendant filed a notice

4

of removal, removing the present action to this Court based on diversity jurisdiction.[3] ECF No. 1. On September 8, 2025, Defendant moved to dismiss Plaintiff's complaint for failure to state a claim. ECF No. 4. Plaintiff filed a response in opposition to Defendant's motion on October 10, 2025, ECF No. 6, to which Defendant replied on October 31, 2025, ECF No. 7.

## LEGAL STANDARDS

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Dismissal under Rule 12(b)(6) is appropriate where the complaint fails to state a cognizable legal theory or allege sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When reviewing a Rule 12(b)(6) motion, the court accepts all facts alleged in the

---

[3] Defendant requests judicial notice of the California Secretary of State business entity search for Plaintiff VEBS, Inc. in support of the removal of this action to federal court based on diversity jurisdiction. ECF No. 2. Federal Rule of Evidence 201(b) allows courts to take judicial notice of matters that are either "generally within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b). The content of records of administrative bodies are proper subjects for judicial notice under Rule 201(d). *See Interstate Natural Gas Co. v. S. Cal. Gas Co.,* 209 F.2d 380, 385 (9th Cir. 1953). Since Plaintiff does not dispute judicial notice of Defendant's document and the document is properly subject to judicial notice, the Court takes judicial notice of the requested document. ECF No. 2, at 4-6.

25-cv-02270-GPC-KSC

complaint as true and draws all reasonable inferences in favor of the non-moving party. *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). Although the general rule prohibits a district court from considering evidence outside the pleadings in reviewing a motion to dismiss, it may properly consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## DISCUSSION

### I.    Breach of Contract (Count I)

Though brought under one cause of action, Plaintiff essentially alleges two independent breach of contract theories. First, Plaintiff alleges that Defendant breached the Fee Agreement and Marketing Agreements—attached to the complaint and incorporated by reference—executed between Defendant and Plaintiff in July of 2012 by misreporting the applicable commission split when writing insurance policies during his agency with Plaintiff. Next, Plaintiff alleges that Defendant breached his contractual obligation to pay post-termination Override Commissions to Plaintiff by moving clients into new products without paying any Override Commissions.

In his motion to dismiss, Defendant argues that: 1) the Marketing Agreement, insofar as it requires Defendant to pay post-termination Override Commissions to Plaintiff in perpetuity, is unenforceable under California Business & Professions Code § 16600, ECF No. 4-1, at 19; 2) Plaintiff's breach of contract claims are time-barred, *id.* at 10-12; and 3) Plaintiff fails to allege sufficient facts to constitute a plausible breach of contract claim, *id.*, at 15.

### A.    The Requirement that Defendant Pay Post-Termination Commissions to Plaintiff in Perpetuity Is Unenforceable Under § 16600.

As the validity of the contract is a threshold matter, the Court first addresses Defendant's argument that the Marketing Agreement is unenforceable pursuant to California Business & Professions Code § 16600.

6

25-cv-02270-GPC-KSC

The Fee Agreement between Plaintiff and Defendant provides that Defendant must provide Plaintiff with thirty percent of all commissions generated by use of the VEBS Program. ECF No. 1-2, at 17. The Marketing Agreement refers to the commissions articulated in the Fee Agreement owed from Defendant to Plaintiff as "Override Commissions." *Id.* at 22. The Marketing Agreement further states, in Paragraph 5(d), that, "[s]hould either party determine not to renew the Agreement, [Defendant] shall continue to pay the Override Commissions pursuant to the Agreement." *Id.* at 25.

California Business & Professions Code § 16600 requires that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. "Under the statute's plain meaning, therefore, an employer cannot by contract restrain a former employee from engaging in his or her profession, trade, or business unless the agreement falls within one of the exceptions to the rule."[4] *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 289 (Cal. 2008). "The statute embodies the settled public policy in California that favors open competition," *Nulife Ventures, Inc. v. Avacen, Inc.*, No. 20-CV-2019-BAS-KSC, 2020 WL 7318122, at *11 (S.D. Cal. Dec. 11, 2020) (citing *Kelton v. Stravinski*, Cal. Rptr. 3d 877, (Ct. App. 2006)), and "California courts have been clear in their expression that section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat," *Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1885 (S.D. Cal. 2014) (quoting *Edwards,* 189 P.3d 285, 291) (internal quotation marks omitted). Thus, per

---

[4] The exceptions to § 16600 "apply to contracts governing (1) sales of goodwill of a business or disposition of ownership interest in the business entity; (2) dissolution of the partnership or dissociation of the partnership or dissociation of a partner from the partnership; and (3) dissolution or sale of a limited liability company." *Ventures, Inc. v. Avacen, Inc.*, No. 20-CV-2019-BAS-KSC, 2020 WL 7318122, at *11 (S.D. Cal. Dec. 11, 2020) (citing *See* Cal. Bus. & Prof. Code §§ 16601–03). None applies here.

25-cv-02270-GPC-KSC

§ 16600, covenants to not compete and non-solicitation clauses are generally void. *See*, *e.g.*, *Power Integrations, Inc. v. De Lara*, No. 20-CV-410-MMA-MSB, 2020 WL 1467406, at *14 (S.D. Cal. Mar. 26, 2020) (quoting *Wanke, Indus., Commercial, Residential, Inc. v. Keck*, 147 Cal. Rptr. 3d 651, 670 (Ct. App. 2012)) ("[S]ection 16600 generally prohibits the enforcement of a nonsolicitation agreement in all cases in which the trade secret exception does not apply"); *Nulife Ventures, Inc.*, 2020 WL 7318122, at *11 (quoting *Fillpoint, LLC v. Maas*, 146 Cal. Rptr. 3d 194, 199 (Cal. Ct. App. 2012)) ("Under section 16600, 'covenants not to compete are generally unenforceable[.]'"). Contracts may also not impose "post-employment penalt[ies]" that restrict an employee or independent contractor's[5] mobility or capacity to compete. *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1091 (N.D. Cal. 2009).

Defendant argues that the Marketing Agreement's provision that Defendant must pay Override Commissions to Plaintiff on all business with clients generated through the VEBS Program in perpetuity functions as a non-solicitation clause and a financial penalty for competition prohibited by § 16600. The Court agrees.

Section 16600 is expansive. "An accounting firm, for example, may not bar a departing employee from providing accounting services for her clients, nor may it bar her from soliciting the firm's clients." *Hendricks v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1027 (N.D. Cal. 2016) (citing *Edwards*, 189 P.3d at 289). Companies may also not require departing employees to forfeit post-employment benefits if they join a competitor or pay any liquidated damages for competing. *Id.* (citing cases). *See also Golden v. California*

---

[5] Courts have found § 16600 relates to contracts for both employees and independent contractors. *See*, *e.g.*, *Nulife Ventures, Inc.*, 2020 WL 7318122, at *11 ("The only difference here is that the IBPs are independent contractors, which is not enough to bring the contract outside the purview of section 16600.")

25-cv-02270-GPC-KSC

*Emergency Physicians Med. Grp*., 896 F.3d 1018 (9th Cir. 2018) ("The California Supreme Court has applied section 16600 to invalidate a monetary penalty for engaging in competitive conduct . . . an agreement to forfeit retirement benefits . . . and a short-term promise not to compete or to solicit clients . . . and it has even suggested that a stock option penalty or a promise not to solicit a small group of clients would fail under the statute." (internal citations omitted)). By requiring Defendant to pay Plaintiff thirty percent of any life insurance, annuity, and long-term care business earnings from any clients that initially connected with Defendant through the VEBS Program in perpetuity, Plaintiff essentially imposes a financial penalty on Defendant for engaging in competitive behavior and continuing to solicit business from VEBS clients. This is the type of behavior § 16600 prohibits. If an accounting firm cannot prohibit a departing employee from taking her clients with her—or even soliciting the firm's other clients—nor impose a penalty upon her for doing so, *Edwards*, 189 P.3d at 290, then Plaintiff cannot penalize Defendant for maintaining sales relationships with his clients generated through the VEBS Program after ending his contractual relationship with Plaintiff.

While courts have found some post-termination fee-sharing schemes acceptable under § 16600, such provisions were narrower in both time and scope than the provision at issue here. For instance, in *Hendrickson v. Octagon Inc*., a court in the Northern District of California upheld a fee-sharing agreement that required sports agents who left their firms to provide those firms with a portion of fees earned on client contracts negotiated and signed within a one or two-year "restricted period" following their employment. 225 F. Supp. 3d 1013, 1028-29 (N.D. Cal. 2016). The Court found that, because the firms "front costs and guarantee six-figure salaries," they needed to implement post-employment fee-sharing agreements to protect their investments, particularly given the expectation that agents will move from firm to firm. *Id.* at 1029. The Court found that such an agreement was not a restraint on trade and passed muster under § 16600 "so long as the fee-sharing

9

arrangements do not extend beyond protecting returns from bona fide firm investments." *Id.*

Here, the requirement that Defendant pay post-termination Override Commissions to Plaintiff on business with any clients gained through the VEBS program in perpetuity "extend[s] beyond protecting returns from bona fide . . . investments" made by Plaintiff in Defendant's training. *Id.* This is especially the case given that the Override Commissions are not temporally limited to a "restricted period," and Plaintiff did not provide any salary to Defendant. Accordingly, the clause in the Marketing Agreement requiring Defendant to continue to pay Override Commissions to Plaintiff after the termination of the agreement—Paragraph 5(d)—is unenforceable.[6]

Because Plaintiff cannot state a plausible claim for relief for the breach of an unenforceable contract provision, Defendant's motion to dismiss is GRANTED as to Plaintiff's breach of contract claims attempting to enforce Paragraph 5(d) requiring Plaintiff to pay post-termination Override Commissions.[7] *See*, *e.g.*, *Robert Half Int'l, Inc.*, 68 F. Supp. 3d at 1185-86 (granting motion to dismiss plaintiff's claims for breaches of contract that relied on enforcing an unenforceable noncompete clause); *Power Integrations, Inc.*, 2020 WL 1467406, at \*14 (same).

---

[6] Though not at issue here, the Court notes that the Marketing Agreement also contains more traditional noncompete and non-solicitation clauses, which are also unenforceable under § 16600. *See* ECF No. 1-2, at 25 (Paragraph 3(p)); *id.* at 28 (Paragraph 16(b)).

[7] Defendant argues that, if the Court finds Paragraph 5(d) demanding post-termination Override Commissions to be void, then it must find the entire contract void. However, Defendant disregards the fact that courts routinely declare only the noncompete provisions of contracts void under § 16600 without finding the entire contracts unenforceable. *See*, *e.g.*, *World Fin. Grp. Ins. Agency v. Olson*, No. 24-CV-00480-EJD, 2024 WL 3498490, at \*6 n.3 (N.D. Cal. July 19, 2024); *Power Integrations, Inc.*, 2020 WL 1467406, at \*14; *Robert Half Int'l, Inc.*, 68 F. Supp. 3d at 1186. This Court will do the same.

25-cv-02270-GPC-KSC

The Court denies Plaintiff leave to amend this portion of its breach of contract claim, as amendment would not cure the unenforceable nature of the contract clause upon which Plaintiff's claim relies. *See*, *e.g.*, *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)) ("[L]eave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'").

Having dismissed Plaintiff's breach of contract claim to the extent it seeks to enforce post-termination Override Commissions, the Court will now assess whether Plaintiff has stated a plausible breach of contract claim for Defendant's alleged breach of the Fee Agreement during his agency with Plaintiff.

### B.    Plaintiff Has Adequately Pled a Breach of the Fee Agreement

"A breach of contract claim under California law requires the plaintiff to establish four elements: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance of the contract; (3) defendant's breach of the contract; and (4) damages resulting from defendant's breach of the contract." *McAdam v. State Nat. Ins. Co., Inc.*, 28 F. Supp. 3d 1110, 1116 (S.D. Cal. 2014).

Here, Plaintiff has alleged: (1) that Defendant entered into multiple contracts with Plaintiff in July 2012, including a Fee Agreement and a Marketing Agreement which required Defendant to provide Plaintiff with thirty percent of commissions on business generated through the VEBS Program, ECF No. 1-2, at 11-12; (2) that Plaintiff performed under the Fee Agreement and Marketing Agreement at all times, *id.*, at 12; (3) that Defendant, starting in August 2015, began regularly breaching the contract by misstating the commission split on insurance policy applications, *id.*, at 11-12; and (4) that Plaintiff suffered financial harm through decreased commissions which it was owed, *id.*, at 12.

11

Thus, the Court determines that Plaintiff has pled a plausible claim for breach of contract. Defendant argues that Plaintiff is required to allege additional facts, such as when each breach occurred, which clients were involved and how many, how the commission splits were misstated, or how Plaintiff came to learn of the breach. ECF No. 4-2, at 15. However, such details are not elements of a breach of contract, nor are they required at the motion to dismiss stage, which requires only "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), accompanied by "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiff has met this threshold.

Defendant next alleges that Plaintiff's complaint is inadequately pled because it relies on contracts that are "invalid or incomplete." ECF No. 4-1, at 15. Defendant bases this argument on the following: (1) while the Marketing Agreement refers to the Fee Agreement "attached hereto as Schedule 2," the page titled "Schedule 2" is a blank page, and (2) the Marketing Agreement, at one point, misstates that the Fee Agreement is incorporated in "Schedule 3," rather than "Schedule 2." ECF No. 4-1, at 15-16. Neither argument is persuasive.

Plaintiff attached two exhibits to its complaint: a Fee Agreement, and a Marketing Agreement. *See* ECF No. 1-2, at 16-32. The Fee Agreement, signed by Defendant on July 18, 2012, states that it is "incorporated into the Independent Agent Marketing and Limited License Agreement ('Marketing Agreement') between VEBS and AGENT dated July 18, 2012." *Id.* at 17. The Marketing Agreement, also signed by Defendant on July 18, 2012, states that "AGENT has signed and has agreed to the terms and conditions of the Fee Agreement, which is incorporated herein as Schedule 2." *Id.* at 20. Page twelve of the Marketing Agreement bears only the words "Schedule 2 Fee Agreement," but does not actually provide the content of the Fee Agreement. *Id.* at 31. The Defendant attempts to

25-cv-02270-GPC-KSC

argue that this renders the contract so unclear, ambiguous, and incomplete as to merit dismissal. The Court disagrees.

"A contract may validly include the provisions of a document not physically a part of the basic contract." *Troyk v. Farmers Grp., Inc.*, 90 Cal. Rptr. 3d 589, 610 (Ct. App. 2009). "For the terms of another document to be incorporated into the document executed by the parties, [(1)] the reference must be clear and unequivocal, [(2)] the reference must be called to the attention of the other party and he must consent thereto, and [(3)] the terms of the incorporated document must be known or easily available to the contracting parties." *Lucas v. Hertz Corp.*, 875 F. Supp. 2d 991, 998 (N.D. Cal. 2012) (quoting *Shaw v. Regents of University of California,* 67 Cal. Rptr. 2d 850, 856 (1997)). Here, the blank "Schedule 2" page serves as a placeholder directing individuals to the Fee Agreement incorporated by reference into the Marketing Agreement. The reference to the Fee Agreement is clear; Defendant consented to the content of the Fee Agreement by signing it; and the Fee Agreement was signed by and provided to Defendant on the same day as the Marketing Agreement. Thus, the blank "Schedule 2 Fee Agreement" page does not render the Marketing Agreement so incomplete or ambiguous as to demand dismissal, as it clearly incorporates the terms of the Fee Agreement, which was provided to and signed by Defendant on the same day.

Defendant next argues that what the Court finds to be a clear typographical error— a singular reference to the Fee Agreement as "Schedule 3" rather than "Schedule 2"—also renders the contract so uncertain and indefinite as to be unenforceable and demand dismissal. ECF No. 4-1, at 10-11; ECF No. 7, at 6-7. Page seven of the Marketing Agreement reads "The Fee Agreement, set forth in Schedule 3, shall set forth the fees AGENT shall be responsible to pay to VEBS." ECF No. 1-2, at 26. However, Schedule 3 is a list of confidential information. *Id.* at 32.

13

25-cv-02270-GPC-KSC

This error does not render the Marketing Agreement so uncertain and indefinite that it is unenforceable. The Marketing Agreement correctly identifies the Fee Agreement as being incorporated in Schedule 2 three times before the error indicating that the Fee Agreement is set forth in Schedule 3.[8] The Marketing Agreement also correctly identifies Schedule 3 as containing a list of confidential information twice before the error.[9] Additionally, page twelve is titled "Schedule 2 Fee Agreement" and page thirteen is titled "Schedule 3 Confidential Information." *See* ECF No. 1-2, at 31-32. Thus, the Court finds that one instance of referring to the Fee Agreement as Schedule 3 is "obviously a typographical error, and it's unreasonable to opportunistically seize upon the error, as [Defendant] does, and argue that it renders the [contract] ambiguous." *Whitmore v. Hartford Cas. Ins. Co*., No. 10CV1137-LAB BLM, 2010 WL 5021571, at *3 (S.D. Cal. Dec. 3, 2010). Indeed, "not all typographical errors do." *Id.* (citing *Stasher v. Harger–Haldeman,* 372 P.2d 649, 652 (Cal. 1962); *Heidlebaugh v. Miller*, 271 P.2d 557, 559 (Cal. Ct. App. 1954)). Defendant offers no case law or legal reasoning in support of his argument other than summarily claiming that the error renders the Defendant's obligations under the Fee Agreement uncertain and undefined. Accordingly, the Court will not dismiss Plaintiff's breach of contract claim on these grounds.

---

[8] *See* ECF No. 1-2, at 20 ("Agent has signed and agreed to the terms and conditions of the Fee Agreement, which is incorporated herein as Schedule 2,"); *id* at 22 ("Override Commissions shall refer to any and all compensation required by the Fee Agreement attached hereto as Schedule 2"); *id.* at 24 ("Agent agrees to abide by the terms of the Fee Agreement attached as Schedule 2"); *but see id.* at 26 ("The Fee Agreement, set forth in Schedule 3, shall set forth the fees AGENT shall be responsible to pay VEBS.").

[9] ECF No. 1-2, at 20 ("VEBS is the owner of the Confidential Information identified in Schedule 3"); *id.* at 21 ("A full list of materials comprising said Confidential Information is attached to this Agreement as Schedule 3").

25-cv-02270-GPC-KSC

Plaintiff has alleged sufficient facts to assert a plausible breach of contract cause of action. The Court will now assess whether the cause of action is timely.

### C.      Plaintiff's Breach of Contract Claim Is Not Time-Barred

Defendant argues that the Court must dismiss Plaintiff's breach of contract cause of action as time-barred. "A statute-of-limitations defense may be raised in a Rule 12(b)(6) motion only if the running of the statute is apparent on the face of the complaint." *Joe Hand Promotions Inc. v. Gonzalez*, 423 F. Supp. 3d 779, 782 (D. Ariz. 2019) (citing *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). Courts may grant such a motion only when the complaint cannot be read, with the required liberality, to assert a cause of action that is within the applicable statute of limitations. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

Under California law, the statute of limitations on a claim for breach of a written contract is four years. Cal. Code Civ. Proc. § 337. Generally, "[a] cause of action for breach of contract accrues at the time of the breach of contract, and the statute of limitations begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his right to sue." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006). However, "under the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Lanfri v. Goodwill of Silicon Valley*, 762 F. Supp. 3d 849, 861 (N.D. Cal. 2024) (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875-76 (2013)). Continuous accrual applies when there is a continuing or recurring obligation, such as recurring payments. *See Al -Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 878 (N.D. Cal. 2022). When a cause of action—such as breach of contract—is subject to the theory of continuous accrual, "[a] plaintiff may allege a single cause of action covering the entire series of actionable wrongs." *Lanfri*, 762 F. Supp. 3d at 861 (quoting *Sabic Innovative*

*Plastics US, LLC*, 222 Cal. Rptr. 3d 83, 129 (Ct. App. 2017)). For the purposes of a motion to dismiss a claim for breach of contract, if a complaint alleges any breaches within the statute of limitations, the cause of action is not time-barred. *See Lanfri*, 762 F. Supp. 3d at 861 (quoting *Orange Cnty. Water Dist. v. Unocal Corporation*, 2018 WL 6133719, at *5 (C.D. Cal. Apr. 10, 2018)) ("[I]f any of the negligent acts alleged in . . . [plaintiff's] negligence cause of action occurred within the statute of limitations, the cause of action is not time-barred").

Though Defendant concedes that the theory of continuous accrual would apply to a contract like the one between Plaintiff and Defendant, Defendant argues that Plaintiff does not adequately allege that any of Defendant's breaches occurred within the statute of limitations—or, after July 3, 2021. ECF No. 4-1, at 10-12. The Court disagrees.

Plaintiff alleges that Defendant "started" altering the commission split in August 2015 and was altering the commission split with all his clients by July 2016. ECF No. 1-2, at 12. Drawing all reasonable inferences in Plaintiff's favor, as the Court is required to do at this stage, *Chubb Custom Inc.*, 710 F.3d at 956, Plaintiff's allegation that Defendant "started" specific behavior—with no corresponding allegation indicating that the behavior ever stopped—implies that Defendant's practice of misstating the fee split continued through the termination of the agency relationship between Plaintiff and Defendant, which ended in June 2022. The Court can reasonably infer that Defendant made at least one sale after July 2021 and before the end of the agency relationship in June 2022. *See*, *e.g.*, *Shared P'ship v. Meta Platforms, Inc.*, No. 22-CV-02366-RS, 2024 WL 4280936, at *3 (N.D. Cal. Sept. 23, 2024) ("At this stage, . . . it can be reasonably inferred that if ad purchases were made between 2008 and 2020, at least one of those purchases was made after April 2019. Therefore, [plaintiff] has adequately pled continuing accrual of harm for any agreements after that time."). Thus, Plaintiff's breach of contract cause of action as to Defendant's

misstatement of the commission split is not time-barred on its face. *See Lanfri*, 762 F. Supp. 3d at 861.

Defendant asserts that, to the extent that the Court determines that some of Plaintiff's claims are not time-barred, the Court should dismiss those claims for breaches which occurred prior to July 3, 2021. ECF No. 4-1, at 12. While some of Plaintiff's claims for breach of contract may ultimately be time-barred, "it is unnecessary to differentiate the time period for recoverable damages at the motion to dismiss stage." *Shared P'ship*, WL 4280936, at *3. When a cause of action is not time-barred on its face, the appropriate course of action for a court faced with a motion to dismiss is to deny such a motion—to the extent that it relies upon the theory that a claim is time-barred—regardless of whether a plaintiff may later be limited in terms of the period for which it can seek damages. *See*, *e.g.*, *id.*; *Lanfri*, 762 F. Supp. 3d at 861-62; *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1082-83 (S.D. Cal. 2023). *But see J.B. Painting & Waterproofing, Inc. v. RGB Holdings, LLC*, No. CV 12-6084-R, 2016 WL 6650851, at *2 (C.D. Cal. Sept. 16, 2016) (granting motion to dismiss only to the extent plaintiff sought relief based on breaches prior to the statute of limitations cutoff date); *Hulsey v. Oil & Gas Mgmt. Corp*., No. CV-10-2094-GHK-VBKX, 2010 WL 11598043, at *3 (C.D. Cal. Aug. 23, 2010) (same).

### 1.    Delayed Discovery Rule

Plaintiff argues that the delayed discovery rule tolled the statute of limitations for Plaintiff's breach of contract claims which may otherwise be time-barred (for example, any misstatement of the commission split by Defendant prior to July 3, 2021). Defendant counters that Plaintiff has failed to plead sufficient facts in its complaint to invoke the delayed discovery rule. Regardless, whether the delayed discovery rule applies to Plaintiff's claims "is a factual question the Court is not prepared to answer at this point." *Balanzar*, 654 F. Supp. 3d at 1083.

17

While a breach of contract cause of action generally accrues at the time of the breach regardless of whether the injured party is aware of its right to sue, the "delayed discovery" rule exists to ameliorate "the harshness of this rule." *Perez-Encinas*, 468 F. Supp. 2d at 1134 (quoting *Moreno v. Sanchez,* 131 Cal. Rptr. 2d 684, 689 (Ct. App. 2003)). Thus, under the delayed discovery rule, "a cause of action accrues when the plaintiff discovers or could have discovered, through the exercise of reasonable diligence, all of the facts essential to his cause of action." *Id.*

"Generally, to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1141 (C.D. Cal. 2010) (quoting *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation,* No. C–05–04726 RMW, 2008 WL 4544441, at *8 (N.D. Cal. Sept. 30, 2008)). However, such a pleading standard is only required "when the 'complaint shows on its face that [the] claim would be barred without the benefit of the discovery rule.'" *Balanzar*, 654 F. Supp. 3d at 1083 n.4 (quoting *Harrison v. Great HealthWorks, Inc.*, 2017 WL 2554448, at *3 (S.D. Cal. June 13, 2017)).

Because Plaintiff's complaint is not time-barred without the benefit of the discovery rule, Plaintiff is not required to meet the delayed discovery pleading standard to potentially invoke the rule's benefits at a later point in time. *See Balanzar*, 654 F. Supp. 3d at 1083 n.4. However, the rule will only apply to Plaintiff's claims if Plaintiff can demonstrate that it "could not have made an 'earlier discovery despite reasonable diligence.'" *Id.* at 1083 (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (2005)). Whether Plaintiff exercised reasonable diligence or was alerted to the fact that Defendant was misstating the commission split on his Midland applications is a question that should be addressed after discovery. *See id.*; *Shared P'ship*, 2024 WL 4280936, at *4 ("As [plaintiff's] complaint is

18

25-cv-02270-GPC-KSC

not time-barred on its face, it is also premature to evaluate [plaintiff's] argument that the discovery rule tolls [plaintiff's] claims[.]").

Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's breach of contract claims arising from Defendant's alleged misstatement of the commission split on insurance applications during his agency with Plaintiff. Plaintiff has alleged sufficient facts to state its claim. Additionally, the cause of action is not time-barred on its face, and the Court will not dismiss it as such.

## II.   Fraud by Concealment (Count II)

Defendant argues that Plaintiff's fraudulent concealment claims are both time-barred and insufficiently pled.

"The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Tapia v. Davol, Inc.*, 116 F. Supp. 3d 1149, 1163 (S.D. Cal. 2015) (quoting *Graham v. Bank of America, N.A.,* 172 Cal. Rptr. 3d 218, 228 (Ct. App. 2014)).

Fraudulent concealment is subject to a three-year statute of limitations. *Platt Elec. Supply, Inc.*, 522 F.3d at 1059 (citing Cal. Civ. Proc. Code § 338(d)). However, the delayed discovery rule "is applied to fraud actions by statute." *Cansino v. Bank of Am.*, 169 Cal. Rptr. 3d 619, 628 (Ct. App. 2014). *See also* Cal. Civ. Proc. Code § 338(d) ("The cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."). Thus, "a cause of action for fraud under California law accrues when a plaintiff has inquiry notice, that is, when he or she 'learns, or at least is put on notice, that a representation is false.'" *Platt Elec. Supply, Inc. v. EOFF*

19

*Elect., Inc.*, 522 F.3d 1049, 1059 (9th Cir. 2008) (quoting *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007)). "Because the discovery rule operates as an exception to the statute of limitations, 'if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint.'" *Casino v. Bank of America*, 169 Cal. Rptr. 3d 619, 628 (Ct. App. 2014) (quoting *Hobart v. Hobart Est. Co.*, 159 P.2d 958, 972 (Cal. 1945)). This includes pleading "facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.* A fraudulent concealment plaintiff must also plead facts describing "the time and circumstances of the discovery and what the discovery was." *Id.*; *see also Yumul*, 733 F. Supp. 2d at 1141 (quoting *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation,* 2008 WL 4544441, *8) ("Generally, to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.").

In addition to the pleading requirements created by the delayed discovery rule, a claim for fraudulent concealment is also subject to the heightened pleading standard of Rule 9(b), *Tapia*, 116 F. Supp. 3d at 1163, and must therefore "be accompanied by 'the who, what, when, where, and how' of the misconduct charged. A plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 887 (E.D. Cal. 2019).

Defendant argues that Plaintiff does not allege sufficient facts to state a claim for fraudulent concealment. The Court agrees.

Plaintiff generally alleges the first, second, third, and fifth elements of fraudulent concealment. As to the first, Plaintiff alleges that that Defendant concealed the fact that he was breaching the Fee Agreement by lowering the percentage of commissions provided to Plaintiff. ECF No. 1-2, at 13. As to the second element, Plaintiff alleges—albeit not in its fraudulent concealment cause of action—that Defendant had a "contractual duty to provide weekly reports." *Id.*, at 13-14. Per the contract itself, Defendant was "required to issue weekly financial reports, including all backup documentation supporting sales/revenue from use of the Program." *Id.* at 23. Thus, Plaintiff has alleged that Defendant had a duty to disclose to Plaintiff the sales and revenue that Defendant generated through the Program, which would necessarily involve disclosure of the commissions owed to Plaintiff. Plaintiff has also alleged sufficient facts to satisfy the third element—that Defendant intentionally concealed his misstated commission splits—by alleging that Defendant started the practice of misstating the commission split slowly, realized that Plaintiff did not notice, and then began implementing the practice with all his clients in a scheme to increase his profits. *Id.*, at 12-13. Lastly, Plaintiff has alleged that it sustained damage as a result of the omission in the form of economic harm through decreased commissions. *Id.*, at 13.

Plaintiff does not allege that, had Plaintiff known of the misstated commission splits, Plaintiff would have acted differently. Instead, the complaint avers only that, had the concealed information been disclosed, Plaintiff would have received the full commission split to which it was entitled. *Id*. However, this allegation does not involve Plaintiff's own behavior, as assessed by the fourth element of a fraudulent concealment claim. *See*, *e.g.*, *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019) (quoting *Sevidal v. Target*, 117 Cal. Rptr. 3d 66, 85 (Ct. App. 2010)) ("[R]eliance is an essential element of a fraudulent concealment claim"); *W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*, 534 F. Supp. 3d 1209, 1251 (E.D. Cal. 2021) ("[R]eliance in fraudulent concealment case (as distinct from other species of fraud) is established by showing that had the omitted

25-cv-02270-GPC-KSC

information been disclosed one would have been aware of it and behaved differently." (internal quotation marks and citation omitted)). As Plaintiff has failed to adequately allege reliance, the claim will be dismissed.

While the Court must dismiss on this basis alone, the Court also notes that the elements of fraudulent concealment which Plaintiff does allege are not pled with the required particularity per Rule 9(b). While the Court acknowledges that fraudulent concealment claims typically do not require the same level of specificity as, for example, a fraudulent misrepresentation claim, Plaintiff must still plead fraudulent concealment with particularity to the extent that the facts are available to it. *See Epperson v. Gen. Motors, LLC*, 706 F. Supp. 3d 1031, 1039 (S.D. Cal. 2023). Here, Plaintiff has fallen short. For instance, insofar as Plaintiff alleges that Defendant concealed his misstatement of the commission splits, Plaintiff does not allege "the content of the omission and where the omitted information should or could have been revealed." *Goldstein*, 445 F. Supp. 3d at 1018. While Plaintiff does assert that it did not see Defendant's applications to Midland, the complaint does not sufficiently allege how Defendant was misstating or omitting information in a manner such that Plaintiff remained unaware of Defendant's actions. This lack of factual allegations underpinning Plaintiff's fraudulent concealment cause of action further warrants dismissal.

Defendant further alleges that Plaintiff's claim is time-barred, as Plaintiff was on inquiry notice of Defendant's alleged fraud when Defendant submitted his weekly reports to Plaintiff more than three years prior to Plaintiff filing its complaint. ECF No. 4-1, at 12-14. The Court agrees that Plaintiff has not adequately alleged facts concerning its delayed discovery of Defendant's fraudulent concealment. *See Casino*, 169 Cal. Rptr. 3d at 628 (quoting *Hobart*, 159 P.2d at 972) (A fraudulent concealment plaintiff must plead facts "showing that he was not negligent in failing to make the discovery sooner."); *see also id.* (a fraudulent concealment plaintiff must plead facts showing "the time and surrounding

22

25-cv-02270-GPC-KSC

circumstances of the discovery and what the discovery was.'"); *see also Yumul*, 733 F. Supp. 2d at 1141 (quoting *In re Conseco Insurance Co. Annuity Marketing & Sales Practices Litigation,* 2008 WL 4544441, *8) ("Generally, to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."). Plaintiff has not alleged any facts demonstrating why Plaintiff was not on inquiry notice per Defendant's weekly reports—though Plaintiff admits that the weekly report policy was "loosely enforced," ECF No. 6, at 7—nor explaining how or when Plaintiff did learn of the misrepresentations. Indeed, Plaintiff alleges only that it learned of the commission misstatements "recently," ECF No. 1-2, at 12, which is insufficient to invoke the delayed discovery exception. Plaintiff has therefore failed to plead facts establishing the timeliness of its fraudulent concealment claim. *See Casino*, 169 Cal. Rptr. 3d at 628 ("[T]he second amended complaint is deficient for the additional reason that plaintiffs failed to establish the timeliness of the fraud claim.").

Accordingly, the Court GRANTS, without prejudice, Defendant's motion to dismiss Plaintiff's fraudulent concealment claim. The Court will grant leave to amend, as Plaintiff has indicated its capacity to allege additional facts involving its discovery of Defendant's conduct and why it was not negligent in failing to discover it sooner. ECF No. 6, at 6-7.

### III.   Accounting (Count III)

Plaintiff also brings a cause of action for an accounting, which "may be asserted when (1) 'a relationship exists between the plaintiff and defendant that requires an accounting'; and (2) 'some balance is due to the plaintiff that can only be ascertained by an accounting.'" *Santana v. BSI Fin. Servs.*, Inc., 495 F. Supp. 3d 926, 952 (S.D. Cal. 2020) (quoting *Teselle v. McLoughlin*, 92 Cal. Rptr. 3d 696, 715 (Ct. App. 2009)).

Defendant moves to dismiss Plaintiff's accounting cause of action only on the grounds that it is time-barred. ECF No. 4-1, at 14. Because Plaintiff's accounting cause of

action is "ancillary to the perfection of [P]laintiff's right under the . . . contract," it is the contract action—which is essentially the "right sued upon"—that determines the statute of limitations. *Jefferson v. J. E. French Co.*, 355 P.2d 643, 645 (Cal. 1960). Thus, Plaintiff's accounting cause of action is subject to a four-year statute of limitations. Cal. Code Civ. Proc. § 337.

Defendant reiterates the timeliness argument he applied to Plaintiff's breach of contract claim: that the Court must dismiss any accounting sought for alleged breaches prior to July 2021. However, just as it did regarding Plaintiff's breach of contract claims, the Court declines to do so.

As discussed above, Plaintiff's breach of contract claim is timely on its face. Accordingly, so is Plaintiff's accounting cause of action. The Court has also declined, at this time, to determine which of Plaintiff's specific breach of contract claims may or may not be timely by virtue of Plaintiff's delayed discovery. *See*, *e.g.*, *Balanzar*, 654 F. Supp. 3d at 1083 (holding that whether the delayed discovery rule applies to Plaintiff's claims "is a factual question the Court is not prepared to answer at this point."); *Shared P'ship*, 2024 WL 4280936, at *3 (noting that, while some claims may be time-barred, the court need not "differentiate the time period for recoverable damages at the motion to dismiss stage."); *id.* at *4 ("As [plaintiff's] complaint is not time-barred on its face, it is also premature to evaluate [plaintiff's] argument that the discovery rule tolls [plaintiff's] claims."). Therefore, it is also not appropriate, at this stage, for the Court to determine the applicable time period for which Plaintiff may seek an accounting. It is enough that the accounting cause of action is not time-barred on its face, and the Court will not dismiss it as such. The Court therefore DENIES Defendant's motion to dismiss Plaintiff's claim for an accounting.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS**, with prejudice, Defendant's motion to dismiss Plaintiff's breach of contract claims based on Defendant's alleged duty

24

to pay post-termination Override Commissions. The Court **GRANTS**, without prejudice, Defendant's motion to dismiss Plaintiff's fraudulent concealment claims.

The Court **DENIES** Defendant's motion to dismiss Plaintiff's breach of contract claims based on Defendant's misstatements of the contractually mandated commission split when writing insurance policies during his agency with Plaintiff. The Court further **DENIES** Defendant's motion to dismiss Plaintiff's accounting claim.

**IT IS SO ORDERED**.

Dated:  January 20, 2026

Hon. Gonzalo P. Curiel
United States District Judge

25

25-cv-02270-GPC-KSC